The court will now hear argument in the case of United States of America v. Todd Russell Fries, No. 13-10654. Mr. Bach. Good afternoon. May it please this Honorable Court, Richard Bach on behalf of Mr. Fries, the appellant. Mr. Fries is in custody at the Bureau of Prisons in Stafford. This appeal and these arguments represented a severed portion of his case. The first case I had the opportunity to argue in front of this Court about a year ago, which was the chemical event and the false statements. So I'd like to start off with first talking about Mr. Fries' sentence that he received in this case in front of Your Honors. It's the defense's position, the appellate's position that he received an improper sentence. And what he was sentenced to, he received 151 months in his first case. At the end of this case, the Honorable Judge Jorgensen sentenced him to 60 months. Forty months were to run concurrent, and he received a 20-month consecutive sentence. And in the appeal that has been advanced on behalf of Mr. Fries, I would, the Court is probably well aware of all the sentencing guidelines, I would just call Your Honors' attention to 4A1.2 small a 2. And it says that if there is no intervening arrest prior sentences are counted separately unless the sentence resulted from offenses contained in the same charged instrument. And these two counts were part of the same charged incident. That's true, but as I understood it, you made a successful motion for severance before Judge Jorgensen, arguing that in essence it was different, completely different conduct because the counts, can you hear me all right, Mr. Brock? Are you hearing me okay? Yes, sir. The counts on which he was sentenced in the most recent trial arose from the execution of the search warrant at his home when these devices were found. And I thought your argument in support of severance was it would be unduly prejudicial because that didn't have anything to do with the assaults and harassment and basically the weapons, the chemical weapons issue that we talked about the last time. Is that correct? That's correct. One of the, the Honorable Judge Pyle, who was a magistrate, did his findings and one of the reasons for the severance was that there was no victim and no motive connected with these devices. And it was the government really was very vocal in attempting to oppose the request for a severance. But if I didn't file for a severance, am I doing my, am I being responsible to the client and Well, I'm not criticizing your lawyering. I guess what I'm, if I'm being critical at all, it's in the analysis of whether or not under 4A1.2A1, the conduct on which he was convicted in the second trial was part of the instant offense that he was convicted of in the first trial. Do you understand my question? I understand your question, but again, it, I don't, the, the language under the, it says from the offenses contained in the same charging instrument, though. So I don't know. I guess I'm having the same lack of clarity, for lack of a better word. If the offenses are unrelated for purposes of trial, then doesn't that continue to sentencing? If they're unrelated for trial, how can they then become related for sentencing purposes? Well, I can only go by what's, what I thought was the controlling language in the, under the sentencing guidelines. I understand that the government said, and the pre-sentence report said that this is relevant conduct, and that's why the sentence, part of the sentence was, was consecutive. But it's the same charging document, and there's a case that talks about that. It's the Gonzales case, which is a Ninth Circuit case, United States v. Gonzales, July 11, 2013, that, that cites that rule. But the... Was Gonzales interpreting the same section that you're talking about? Well, Gonzales was, he claimed he, even though he was sentenced, like, on separate days, so I think that. But it does cite the, the very beginning of the case. It's the, the section I said provides that prior sentences must be counted separately unless the sentence... But that wasn't the issue in Gonzales. Sorry? That wasn't the issue in Gonzales. No, that was not an issue. That's correct, Your Honor. So I, I just thought, and when I argued at the time of sentencing, it seems that he had a right to have a severance, and yet, if he didn't file the severance, does that mean that he wouldn't have got any consecutive time? So I would kind of like a, a Gordian's knot. I... Well, let me ask you, let me come at it from this perspective. The government could have charged in two separate indictments the counts that were before us the last time and the counts that bring you here today. And if that were the case, there would be no question under Gonzales that the district court could treat the consecutive conviction on the first set of counts as prior offenses. Would you agree? Yes. So then the question becomes whether the government, which chose to include all four counts in the same indictment, but granted your motion to sever them into two trials, in effect, created the same situation that was before the court in Gonzales. Right. So why not? Well, because that's not what happened. What happened, again, it is the, it was in the same charging document. And I know the court's position, and I felt that was a legitimate issue to raise for the court. Okay. I just, I have a lot of issues in this case. Well, let me, if I may, on this point, let's assume that we adopt a bright-line test, as you say. Nevertheless, I come down to what difference did it make? Under both guideline ranges, the 60 months is within the range. Secondly, there's no, quote, action as to the 60 months. The action is the 20 months of consecutive time. And what is there to indicate a probability that the judge, if he reduced the sentence to 50 months, would have reduced the consecutive time and make a difference? Well, she gave him 151 months on the first event. And that was, so she heard this case, and she felt 40 of the months should run concurrent. You know, the other 20 months ran consecutive. And again, I don't want to waste your time here, but I just go back to the language in that, in that sentencing guideline. I understand what the court has responded to me, but I just look at that language. I guess the question is, do we look at the fact that it was contained in the same charging instrument, or do we look at whether or not it arises out of the same offense conduct? Well, it says the same charging document. It doesn't say the same... No, no, no. I'm not disagreeing over that. But the question is, do we focus, for purposes of establishing your bright line position, solely on the fact that it was contained, all four counts were contained in the same instrument, versus what the rule, the sentencing guideline seems to talk about, which is whether or not they arose out of the same offense conduct. Right. I'm hanging my hat on that. Okay. All right. Would you like to move on to a different issue? Very quickly. The next argument I'd like to talk to you about is the, I believe the government made a series of errors in summation, especially in the rebuttal portion of the summation. And I, I've outlined those in the, in the, in the brief. The, the government has answered, I've replied, but I'd just like to talk about what I thought were some areas of, that I felt deprived him of, of a fair trial. I felt there was improper vouching. The assisted U.S. attorney said the search was lawful. That was the search warrant. It's supported with the approval of a Federal judge. She says on May the 13th, 2011, law enforcement officers executed a search warrant on the defendant's home. She gave her personal opinion on guilt. She said the defendant's guilty of both counts. Of course, a prosecutor may not express an opinion on defendant's guilt. Mr. Brockett, can I ask you a question with regard to, to the issue of, of, of vouching? I thought that on the basis of a defense concern, the trial court had limited the explanation as to why the agents were at Mr. Fries' home when, on, when the devices were found. Right. But she still argued on May 13th, law enforcement officers executed a search warrant on the defendant's house. And as Judge Jorgensen told you, you're not to guess or speculate about the reason for that, but law enforcement officers were lawfully at the home of the defendant, Todd Fries, and they searched the house. Well, I guess my question to you is, in light of the district court's attempt to limit the impact of why the officers were there, how there was prejudicial error from what the court instructed the witnesses to say? Well, I basically outlined a number, and that was specifically with regard to whether or not a Federal judge had authorized them to be present. That's, that's what I'm focusing on right now. Well, it's just, obviously, I did have the discussion with the judge. I was concerned about that. I tried to have something. It was going to come in, I felt. So, so do we review that for abuse of discretion? Sorry? Do we review that for abuse of discretion? What's the standard of review of the district court's ruling on what amounts to a motion in limine? I would respectfully say that I would ask the court to look at all of the areas that I felt that the prosecutor may have stepped over the line and look at them. Oh, sort of a cumulative error approach? Cumulative, right. Okay. I felt she misstated the evidence. She said that my client knew this was a bomb. He went to New Mexico to get these devices because they are illegal here in Arizona. But didn't your client testify that he, he purchased them at a roadside stand? Yes. In New Mexico? Right. At a roadside stand. So what's improper about the prosecutor recounting admissions that your client made on the witness stand? Well, she's saying that they were illegal here in Arizona. So she was claiming they were illegal in the State of Arizona, giving her opinion about whether or not. Legal in Arizona or New Mexico? No. She said he went to New Mexico to get these devices because they are illegal here in Arizona. Oh, illegal in Arizona. And, of course, he was being tried in Arizona for possession of illegal, improvised explosive devices, right? Right. And then she gave her personal impression. She said about the gloves. As you may recall, the gloves were in a drawer in his home where there were the BBs and there were these devices and the cement. And she claimed, or she made an argument, he didn't want to leave any kind of fingerprints. You can assume the reason why is because he didn't want to leave any fingerprints on the device. But didn't he admit on cross-examination that he wore gloves? Yes. Why is that not a fair inference to argue from the facts that are already in evidence before the jury? Well, I thought it was her personal opinion, her personal, giving her personal impression, and I thought that a prosecutor has no business telling the jury the individual impressions of the evidence. So you don't think that the prosecutor can ask the jury to draw that inference? No. You know, I was a prosecutor for three years, and so. And it's an argument you probably would have made, too. I understand. Okay. I think it's the cumulative error that you want us to focus on, not just the isolated. But then she said something that I really had a problem with. She said that we know what he really wanted to do with them. The defendant's intention was something different than the pack rats. So, and again, the motion for the severance was based upon that there was no motive or no victim, yet in her rebuttal, she's saying that these devices, and our whole defense was to eradicate these nuisances, these pack rats, was something different than pack rats, suggesting he was going to go out and do something with these. But that was his defense, right? The reason I had these things was to get rid of vermin. Right. Right. So what's wrong in arguing to the jury that that defense is not worthy of belief because of the other evidence that the jury heard about the book and, you know, how to get at people and that sort of thing? Isn't that a fair argument? About the, about what other evidence? About the book and, you know, how to do bad things to people that you don't like. Well, I had a problem with that book, too. I understand. I understand. But I'm still trying to understand what's wrong with the prosecutor arguing to the jury that the defendant's defense is not credible or worthy of belief based on the other admissible evidence in the case. Isn't that a fair argument? Right. But it puts in the mind of the jury he's going to do something, you know, nefarious with these things, go after people or do something when she gives him. He got indicted for that. I mean, that's the whole question the jury has to decide, whether or not the government has proved beyond a reasonable doubt that that's what he intended to do. I have about 4 minutes and 47 seconds. And I would like to, in my rebuttal, talk about the statutory tapestry, if I could. Counsel, before you leave, I just wanted to clarify what your position is on Gonzalez. Do you agree that Gonzalez involved computational criminal history? Yes. Okay. And so it's not just he's on parole, as I remember. Right. But that's a different analysis than for a prior sentence. Wouldn't you agree? No. My analysis is because I have a Ninth Circuit published opinion that discusses that. Well, it makes mention of that. Mention. But it doesn't analyze that particular. Okay. Okay. We're on the same page. Okay. Thank you. So I have about 4 minutes left. All right. Sure. If you want to reserve, then we'll hear from Mr. Sachs. Good afternoon. May it please the Court. Peter Sachs for the United States. I wanted to start by addressing Mr. Bok's arguments about the computation of the criminal history at sentencing. I think there's really three issues to point out. One is, you know, the ultimate question, did the district court properly apply the sentencing guidelines in this situation? I think the guidelines really don't have much wiggle room here. It's a straightforward application of the guidelines, and the conduct in counts 1 and 2. Well, why not? If you use the plain language as counsel from Mr. Freese said, that if it's charged in the same charging document, it's not to be counted separately. What's your response to that language? I think he's relying on this Gonzales case, and the government's position is that's an opposite. That contemplates a different scenario. In Gonzales, the defendant had two prior convictions, and the question is how do we calculate the criminal history based on those two prior convictions? Here, the defendant really only had one, and Gonzales would perhaps come into play if the defendant in this situation was convicted for a third offense, and the question was at sentencing, hey, what do we do with these two prior convictions? But that's really not at play in this case. The next issue about the sentencing is one of fairness. Was the defendant punished twice for the same conduct? When we review the transcript from the sentencing, it's clear that the judge had that concern in mind and put on the record that she was not considering the offenses for the convictions in counts 1 and 2 as relevant conduct when sentencing for counts 3 and 4. Additionally, you know, another concern is also fairness. Was the defendant being punished for filing a motion to sever? It was a strategic decision by him, but I think any concerns about fairness are, are alleviated by the actual sentence that was imposed in the situation, 20 months, which was significantly below the 57 to 71-month guideline range. Finally, as to the sentence, another issue is, is it impermissible for the government to change its position? Certainly in the initial case, the government argued to the court that all these counts were related, but based on the magistrate's ruling and the district court's ruling on the adoption of the R&R, the government was entitled to modify its position and adopt the position of the court. As to the admission of the book, the government acknowledges that generally speaking, courts are understandably wary of introducing contents of books into evidence to show a defendant's thoughts or intent. But as the body of case law says, no, there are exceptions to that. And when reading material is found that's specific and has instructions that are very similar to the defendant's conduct, then in some limited circumstances, the admission of that material is appropriate, and that's what happened in this case. I thought the counts of conviction were simply the knowing possession of unregistered explosive devices. Isn't the only mens rea knowing that you possess the devices without regard to what your purpose is for doing so? There's two counts. The count for, count three, or the original count three, which became count one, which was knowing the characteristics of the devices that required them to be registered. You don't have to know that it needs to be registered. You just need to be aware of those characteristics. And then for count four, which became count two, there is a requirement that the defendant intended to use the components that were found as a weapon. So the contents of the book go both to showing defendant's intent to use the components as a weapon and also help show that he was aware of the characteristics that required it to be registered. Does the Court have any additional questions? I don't think so. Yeah. The government will rely on its brief. Thank you. All right. Mr. Bach, you've got, I think, about 4 minutes on rebuttal.  I have is the tapestry of all of these statutes under Title 26. And the CFRs, I wasn't able to get into the CFRs. Counselor, are you rebutting the government's argument here? Oh, I can't make another argument? Well, I'll let you do it. Technically, I suppose I could tell you no, but go ahead. All right. Sorry about that. That's the chance you take when you don't address an issue on direct, when you are giving your argument, because if the government doesn't go into it, then technically you're precluded from doing it. But I wouldn't want to take advantage of the. And you're catching the panel in a charitable mood today. So go ahead. If he has a couple of words to say. Okay. You won't object to Sir's reply. So I never got to talk about the registration requirement. I never got to talk about 265821, how the tax is supposed to be made. I never got to say that this was an excise tax. Because the Court said those issues were irrelevant. That was not the, that was, those issues were not related to the charges that were being brought. It was kind of an effort to defray or to divert the jury's attention to something that was not at issue. That's why I didn't say anything, because the Court told me that. I didn't want to say. And so what was wrong with the Court saying that? Well, because I felt, Your Honor, that the theory is as to those devices, as to whether first of all, to pay the tax you have to be a manufacturer, an importer or a maker. And I wasn't able to develop that. What he had here were these, he had these six spheres. And they said they were the size of a plum. And then he had these cylinders. And he had, I believe, 21 cylinders. So he had 21 cylinders, which his position was that he bought these. And, again, they were for the bankrupts. Three of them he manufactured, didn't he? I mean, he admitted that he put the glue around the spheres and then glued the BBs to them. Right. So he modified them, but he didn't. Why wouldn't that be manufacturing, even if, as you say, the regulations contemplate the payment of the tax by the manufacturer? Well, I think that he would have, and the jury instruction was a general knowledge instruction. And then there was a Staples instruction. It got very, it got very, I think it got very confusing. And I just felt that on his behalf I wasn't able to develop the tax aspect of this situation and what needs to be done. These devices had no marks on them. They could have been made in another country, the plumb-sized spherical devices and the cylinders. But I just really felt, Judge ---- I thought he testified that he crossed state lines and purchased them in New Mexico and then brought them back to Arizona. So what difference does it make whether they were made in a foreign country or not? Well, there was one case, Goodson, that says that they have to show they were manufactured in the United States. And also, if you look at this case, Coombs, that I cited, and I'm almost done. I have 11 seconds. It just says that this was a short barrel case. Mere possession of a short barrel rifle is not illegal under this section. It's possession of a firearm made in violation of some other provision of the code that is prohibited under Section 5861C. So I just thought that these tax arguments were co-joined with the devices. And I felt I wasn't able to fully explore that with all due respect to Judge Jorgensen. Thank you, Judge. Thank you. Mr. Sachs, I will give you a minute if you wish to rebut solely on the Title 26 argument. Just very briefly, the Goodson case was over 40 years old. It's never been cited by any court in this, in the Ninth Circuit. And it really has no application here. In terms of it being a tax case, really not relevant. And because these devices had no markings, they couldn't be registered. The testimony from the custodian of records or the expert related to the registry testified that if someone had submitted these devices for registration, they would have been rejected because it would be impossible to register them. That's at Supplemental Excerpt of Record, page 103. All right. Gentlemen, thank you for coming to San Francisco to argue the case. The case just argued is submitted. We hope to get a decision out fairly soon, and we'll get it to you as soon as we can. We stand adjourned. Thank you very much.
judges: Tallman, Rawlinson, Garbis